# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

ST. JUDE MEDICAL S.C., INC.,                    Civil No. 19-cv-2400 (JRT/BRT)

               Plaintiff,

v.                                              **MEMORANDUM OPINION AND ORDER
                                                DENYING DEFENDANT'S MOTION TO**
LUCAS SUCHOMEL,                                 **DISMISS**

               Defendant.

---

Joel D. O'Malley, **NILAN JOHNSON LEWIS PA**, 250 Marquette Avenue, Suite 800, Minneapolis, MN 55401, for plaintiff;

Faris Rashid, **GREENE ESPEL PLLP**, 222 South Ninth Street, Suite 2200 Minneapolis, MN 55402, for defendant.

This case arises out of a contract dispute between Plaintiff St. Jude Medical S.C., Inc. and its former employee, Defendant Lucas Suchomel. St. Jude alleges that Suchomel breached a term-of-years employment contract by resigning from St. Jude before the term-of-years expired. Suchomel filed a Motion to Dismiss, arguing that (1) St. Jude is not a party to the contract and therefore lacks standing; (2) the Court lacks personal jurisdiction over Suchomel; and (3) Suchomel fails to plausibly plead a claim for breach-of-contract under California law. Because the Court finds that St. Jude is party to the contract, the Court has personal jurisdiction over Suchomel, and Minnesota, not California law, applies, the Court will deny Suchomel's Motion to Dismiss.

**BACKGROUND**

I. **FACTUAL BACKGROUND**

A. **The Parties**

Plaintiff, St. Jude Medical S.C., Inc. ("St. Jude"), is a Minnesota corporation with places of business in St. Paul, Minnesota and Austin, Texas. (Notice of Removal, Ex. 1 (the "Compl.") ¶ 3, August 30, 2019, Docket No. 1-1.) St. Jude became a wholly owned subsidiary of Abbott Laboratories, an Illinois corporation, in 2017. (Decl. of Faris A. Rashid ("Rashid Decl.) ¶ 3, Ex. A at 3, Sept. 6, 2019, Docket No. 7.) Defendant, Lucas Suchomel ("Suchomel"), is a resident and citizen of California. (Compl. ¶ 4.)

B. **Suchomel's Employment**

Suchomel joined St. Jude in 2015 as a Technical Support Specialist in Washington, D.C. (*Id.* ¶¶ 16, 21.) After being hired, Suchomel went through a training program provided by St. Jude to become an "EP Mapper." (*Id.* ¶¶ 16–20.) Physicians rely on EP Mappers to identify the location in the heart causing an arrhythmia. (*Id.* ¶ 12.) To that end, an employee must go through extensive training to become an EP Mapper as the employee must become familiar with the anatomy of the heart and the highly technical equipment used to identify heart arrhythmias. (*Id.* ¶¶ 12–14.) Because of the specialized, often years-long training required to become an EP Mapper, replacing EP Mappers like Suchomel is a difficult task for St. Jude. (*Id.* ¶ 14, 17.)

### C.  The Employment Contract

Suchomel took a promotion with St. Jude in May 2019 and signed two contracts relevant to the present dispute—one underlying contract (the "Employee Agreement") and one addendum that modified the terms of the underlying contract (the "Addendum").    (Compl. ¶ 5, Ex. 1 ("Employee Agreement"), Ex. 2 ("Addendum.")) Relevant portions of both contracts are discussed below.

#### 1.  The Contracting Parties

The underlying Employee Agreement is between "Abbott Laboratories . . . on behalf of itself and its Subsidiaries . . . (collectively, 'ABBOTT')" and Suchomel.  (Employee Agreement at 18.) The Employee Agreement does not list St. Jude as a party to the contract or otherwise mention St. Jude.

The Addendum states that it is "between St. Jude Medical S.C., Inc. . . . together with Abbott Laboratories . . . , and Abbott Laboratories' subsidiaries, divisions, units or affiliates thereof, collectively 'ABBOTT')," and Suchomel.  (Addendum at 28.)   The Addendum notes that it is "an addendum to the [underlying Employee Agreement]" and modifies certain aspects of it.  (*Id.*)

#### 2.  Term-of-Years

The Addendum (referred to in the contract provisions cited below as the "Term Agreement") modifies the at-will nature of the underlying Employee Agreement, stating that:

This Term Agreement is a written agreement modifying EMPLOYEE's "at will" status, and is entered into in accordance with Section 21 of the Employee Agreement. Pursuant to this Term Agreement, ABBOTT will employ EMPLOYEE for an initial term of two (2) years, beginning on the effective date specified above [April 1, 2019] (the "Employment Term"), unless and until terminated earlier in accordance with Section 2 of this Agreement. [Unless mutually agreed to] EMPLOYEE's employment will continue on an at-will basis following the Employment Term.

(*Id.* § 1.)  Section 2 of the Addendum lists valid reasons that Suchomel's employment may be terminated before the term-of-years expires, none of which are relevant here.  (*Id.* § 2.)  Section 3 proceeds to list the "Consequences" of a valid early termination in accordance with § 2.

### 3.  Choice of Law

The Addendum includes a choice of law provision which states:

This Term Agreement is a written agreement modifying the Choice of Law provision in Section 15 of the Employee Agreement.  This Term Agreement shall be construed, and its enforceability and the relationship of the parties shall be determined, in all respects under the laws of Minnesota, without giving effect to conflict of laws.

(*Id.* § 5.)

### 4.  Jurisdiction/Venue (Forum Selection Clause)

The Addendum also includes a forum selection clause which states:

This Term Agreement is a written agreement modifying the Jurisdiction/Venue provision in Section 16 of the Employee Agreement.  The parties agree to the exclusive jurisdiction of the state and federal courts in Ramsey County, Minnesota, in

> any action or proceeding arising out of or relating to this Term Agreement and the Employee Agreement or the transactions contemplated hereby, and further irrevocably agree that all claims in any such action or proceeding shall be heard and determined in Ramsey County, Minnesota state or federal court. . . .

(*Id.* § 6.A.)  The Addendum also states that if the clause is deemed unenforceable, the parties agree that the case may nevertheless be tried in state or federal courts in Ramsey County, Minnesota.  (*Id.* § 6.B.)

### D.  Suchomel's Resignation

In early July 2019—just two months after signing the Employee Agreement and Addendum—Suchomel resigned from his position and took a position with Farapulse, a competitor of St. Jude.  (Compl. ¶ 36, 42–43.)  St. Jude states that it reminded Suchomel of the terms of his employment and tried to persuade him to stay.  (*Id.* ¶ 44.)  Suchomel, however, was not persuaded and began his employment with Farapulse on July 29, 2019.  (*Id.* ¶ 52.)

## II.  PROCEDURAL BACKGROUND

St. Jude filed this action for breach-of-contract against Suchomel on July 31, 2019 in Minnesota state court, seeking actual and compensatory damages of over $1.5 million.  (*Id.* ¶ 55.)  Suchomel timely removed the case to this court on August 30, 2019.  (Notice of Removal at 4 .)

On September 6, 2019, Suchomel filed a Motion to Dismiss arguing that (1) pursuant to Fed. R. Civ. P. 12(b)(1), St. Jude lacks standing because it is not a party to contract; (2) pursuant to Fed. R. Civ. P. 12(b)(2) the Court lacks personal jurisdiction over Suchomel because the forum and jurisdiction selection clauses are invalid; and (3) pursuant to Fed. R. Civ. P. 12(b)(6) St. Jude fails to plausibly state a claim for breach-of-contract under California law.  Each argument will be considered in turn below.

## DISCUSSION

**I.    STANDING PURSUANT TO RULE 12(B)(1)**

### A.  Standard of Review

"A motion to dismiss pursuant to Rule 12(b)(1) challenges the Court's subject matter jurisdiction and requires the Court to examine whether it has authority to decide the claims." *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1063 (D. Minn. 2013).  Because this is a fact-based Rule 12(b)(1) challenge to St. Jude's standing, the Court "need not accept 'bare allegations' in" St. Jude's pleading, but rather may "weigh the evidence, and make findings to resolve disputed fact issues" without the need for trial.  *Disability Support All. v. Heartwood Enterprises*, LLC, 885 F.3d 543, 547 (8th Cir. 2018).

"Standing is always a 'threshold question' in determining whether a federal court may hear a case." *281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011) (quoting *Eckles v. City of Corydon*, 341 F.3d 762, 767 (8th Cir. 2003)).  To have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the

challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–61 (1992)). As the party bringing this action, St. Jude bears the burden of invoking the Court's jurisdiction. *Id.*

### B. Analysis

Suchomel argues that St. Jude lacks standing because it is a stranger to the contract and, as such, St. Jude has no rights or obligations under the contract and cannot seek to enforce it.[1] *See Spokeo*, 136 S. Ct. at 1548 (noting, among other things, to establish "injury in fact" for standing purposes, a plaintiff must show that he or she suffered "an invasion of a legally protected interest").

But St. Jude is clearly not a stranger to the contract. The underlying Employee Agreement and Addendum must be read together. *See Olympus Insurance. Co. v. AON Benfield, Inc.*, 711 F.3d 894, 898 (8th Cir. 2013) ("We give contract language its plain and ordinary meaning, reading it in the context of the instrument as a whole and viewing each part of the contract in light of the others.") (citations omitted). The Addendum states it is between St. Jude, Abbott Laboratories, and Suchomel and is an "addendum to the

---

[1] Suchomel appears to conflate the issue of whether St. Jude is a party to the contract and whether St. Jude was Suchomel's employer. Whether St. Jude or Abbott was Suchomel's actual employer is a separate question that the Court need not answer to determine whether St. Jude has standing to enforce the contract.

[underlying Employee Agreement]." The plain language points to the unambiguous conclusion that St. Jude is a party to the contract.[2] *Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc.*, 913 N.W.2d 687, 692 (Minn. 2018) ("The primary goal of contract interpretation is to determine and enforce the intent of the parties." (alterations accepted)).

Because the Court finds St. Jude is a party to the contract, it has standing to bring breach of contract claims, and Suchomel's argument fails. Accordingly, the Court will deny Suchomel's Motion to Dismiss pursuant to 12(b)(1).

## II. PERSONAL JURISDICTION PURSUANT TO RULE 12(B)(2)

### A. Standard of Review

The Court may exercise personal jurisdiction over a defendant if doing so (1) is consistent with the Minnesota's long-arm statute, Minn. Stat. § 543.19, and (2) comports with the Due Process Clause of the Fourteenth Amendment. *Pope v. Elabo GmbH*, 588 F. Supp. 2d 1008, 1014 (D. Minn. 2008). Because Minnesota's long-arm statue extends as

---

[2] Numerous clauses in the Addendum support this conclusion. The Addendum modified the choice of law and venue provisions from Illinois in the Employee Agreement (where Abbott is incorporated) to Minnesota in the Addendum (where St. Jude is incorporated). The Addendum is also more specific than the Employee Agreement because it lays out the precise term-of-years Suchomel is to be employed and names the specific subsidiary (St. Jude) involved in the agreement. "[A] basic principle of Minnesota contract law instructs courts to make specific contract language controlling over general language." *Jerry's Enterprises, Inc. v. U.S. Specialty Ins. Co.*, 845 F.3d 883, 890–91 (8th Cir. 2017) (citing *Bank Midwest v. Lipetzky*, 674 N.W.2d 176, 181 n.8 (Minn. 2004)).

far as the Due Process Clause allows, "the Court need only consider whether exercising personal jurisdiction over [Defendants] is consistent with due process." *Id.* at 1015.

"Due process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause." *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 726 (8th Cir. 2001) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 14 (1985)).

"Forum selection clauses are prima facie valid and enforced unless they are unjust or unreasonable or invalid."[3] *M.B. Restaurants, Inc. v. CKE Restaurants, Inc.*, 183 F.3d 750, 752 (8th Cir. 1999). Courts recognize three grounds for invalidating a forum selection clause: (1) if the clause is the product of fraud or overreach; (2) if the party would be deprived of his day in court if the clause is enforced; and (3) if enforcing the clause would contravene the public policy of the forum in which the suit is brought. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–95 (1991); *Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 789–90 (8th Cir. 2006).

---

[3] Because both parties cite only federal law to "determine the enforceability of the forum selection clause," the Court applies federal law. *Union Elec. Co. v. Energy Ins. Mut. Ltd.*, 689 F.3d 968, 971 (8th Cir. 2012); *see also Rainforest Café, Inc. v. EklecCo, LLC*, 340 F.3d 544, 546 (8th Cir. 2003) ("Because the parties have not argued that state law would result in a materially different outcome, we indulge their suggestion that we interpret the forum selection clause under federal law.")).

## B. Analysis

Suchomel argues the forum selection clause is invalid because (1) because there is no rational connection between the parties and Minnesota; and (2) it violates Minnesota public policy because it allows St. Jude to forum shop.

Suchomel's arguments fail. First, it is not clear that a rational connection is necessary to enforce an otherwise valid forum selection clause,[4] but even if it were, that element would be satisfied here because St. Jude is a Minnesota-based company. Second, Suchomel's argument that the forum selection clause somehow violates Minnesota public policy is completely without merit. "Minnesota courts routinely enforce [forum selection clauses] and . . . there is no public policy in Minnesota that contravenes the enforcement of such a clause." *Airtel Wireless, LLC v. Mont. Elec. Co., Inc.*, 393 F.Supp.2d 777, 785 (D. Minn. 2005).[5]

---

[4] *See Union Elec. Co.*, 689 F.3d at 969 (discussing enforcement of a forum selection clause in a contract between a Missouri public utility and an insurance company located in Barbados with a principal place of business in Florida that chose New York as the forum and reversing only because the district court failed to consider whether a mandatory arbitration clause violated Missouri public policy); *but see M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972) (noting that a forum could be so remote and inconvenient as to be unreasonable.)

[5] *See also Hauenstein & Bermeister, Inc. v. Met–Fab Indus., Inc.*, 320 N.W.2d 886, 889–90 (Minn. 1982) ("[W]hen the parties to a contract agree that actions arising from that contract will be brought in a particular forum, that agreement should be given effect unless it is shown by the party seeking to avoid the agreement that to do so would be unfair or unreasonable.")

Because the Court finds that the forum selection clause choosing Minnesota as the forum is valid and enforceable, the Court also finds that Suchomel consented to personal jurisdiction in Minnesota. *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 726 (8th Cir. 2001).

Accordingly, the Court will deny Suchomel's Motion to Dismiss pursuant to Rule 12(b)(2).

## III.  CHOICE-OF-LAW AND FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(B)(6)

Before arguing the merits of his Rule 12(b)(6) motion based entirely on California law, Suchomel argues that the contract's clear choice-of-law provision selecting Minnesota law as the governing law is invalid.

"A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 65, (2013).  "[U]nder Minnesota law a contractual choice-of-law provision will govern so long as the parties acted in good faith and without an intent to evade the law." *St. Jude Med. S.C., Inc. v. Biosense Webster, Inc.*, 818 F.3d 785, 788 (8th Cir. 2016). The choice-of-law provision must also be constitutionally permissible. *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313 (1981).  To that end, the State must have "significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Id.*

Suchomel argues first that Abbott is using St. Jude solely to evade California law that is more favorable to Suchomel, and second, that application of Minnesota law is unconstitutional because Minnesota lacks the significant contacts necessary to create state interests.

These arguments make little sense. First, Suchomel fails to explain how Abbott used St. Jude to evade California law, given that the Addendum changed the choice-of-law provision in the underlying Employee Agreement from Illinois to Minnesota, not California to Minnesota.[6]

Second, it is not clear that application of California law would be more favorable to Suchomel. Although California law forbids non-compete agreements, it appears to allow breach-of-contract claims like this one that do not implicate non-compete clauses brought by employers against employees. *See, e.g., Steinberg Moorad & Dunn Inc., a Cal. Corp. v. Dunn*, 136 F. App'x 6, 10 (9th Cir. 2005) (noting that a non-compete provision was invalid but not otherwise finding issue with the employer's breach of contract suit against employee); Cal. Labor Code § 2925 ("[E]mployment for a specified term may be terminated by the employee at any time in case of any willful or permanent breach of the obligations of his employer to him as an employee.").

---

[6] Suchomel's arguments also appear to be premised, at least in part, on the Court finding that St. Jude is a stranger to the contract. However, if St. Jude were a stranger to the contract, it would likely not have standing to enforce the agreement and the Court would have dismissed the matter under Rule 12(b)(1) without reaching Suchomel's Rule 12(b)(6) argument.

Third, and finally, even if California law applied absent the choice-of-law provision and were more favorable to Suchomel, St. Jude's choice of Minnesota law would "not reveal an intent to evade the law," but rather would be an "unsurprising . . . part of the exchange of rights and obligations under the agreement." *Biosense Webster, Inc.*, 818 F.3d at 788 (citing *Combined Ins. Co. of Am. v. Bode*, 77 N.W.2d 533, 536 (Minn. 1956)). And the application of Minnesota law is clearly constitutional given that St. Jude is a party to the contract and has significant contacts with Minnesota, rendering enforcement neither arbitrary nor unfair. *Allstate Ins. Co.*, 449 U.S. at 313.

For these reasons, the Court finds that the choice of law provision included in the contract is valid and enforceable and that Minnesota law governs this dispute. Suchomel's arguments for Rule 12(b)(6) dismissal rest entirely on California, not Minnesota law. Because California law does not apply, the Court need not reach the substance of Suchomel's Rule 12(b)(6) arguments to deny them.

Accordingly, the Court will deny Suchomel's Motion to Dismiss pursuant to Rule 12(b)(6).

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Docket No. 3] is **DENIED.**

DATED:  April 13, 2020
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
Chief Judge
United States District Court